IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| TERRY DYSON, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No: 12-cv-7632 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| VILLAGE OF MIDLOTHIAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, Defendant's motion for summary judgment [92] is granted in part and denied in part. Summary judgment is granted as to Plaintiff's claims relating to his arrest, the search of his person, and the search and seizure of his car. Summary judgment is denied as to Plaintiff's claims alleging that the initial traffic stop was unconstitutional.

## MEMORANDUM OPINION

Terry Dyson ("Plaintiff") filed suit against police officer Anthony Valente ("Valente") and the Village of Midlothian (collectively, "Defendants") on September 24, 2012, claiming violations of Plaintiff's Fourth Amendment rights.[1] (Compl., Dkt. # 1.) Plaintiff's claims have been amended, and his complaint is now in its third iteration. (Third Am. Compl., Dkt. # 77.) This matter is before the Court on Defendants' Motion for Summary Judgment, filed July 29, 2014. (Mot. Summ. J., Dkt. # 92.)

For the reasons set forth below, Defendants' Motion for Summary Judgment is hereby granted in part and denied in part.

---

[1] Plaintiff also filed suit against other named police officers and asserted several other causes of action. The Court previously dismissed from this case all defendants other than Valente and the Village of Midlothian, and has dismissed all causes of action other than Plaintiff's Fourth Amendment search and seizure claims. (Order, Dkt. # 87.)

1

## Undisputed Facts

All facts recited below are undisputed.[2]

On the afternoon or early evening of August 18, 2011, Plaintiff was driving north along Pulaski Avenue in the Village of Midlothian as he returned home from work. (Defs.' LR 56.1 Stat., Dkt. # 94 at ¶ 5-6.) Plaintiff's vehicle did not pass any other vehicles travelling in the same direction. (Pl.'s LR 56.1 Stat., Dkt. # 113, at ¶ 6.) Officer Valente's patrol car stopped behind Plaintiff's vehicle at a stoplight, and when Plaintiff proceeded north through the intersection, Valente activated his sirens and pulled Plaintiff over at the side of Pulaski Ave (Defs.' LR 56.1 Stat., Dkt. # 94 at ¶ 14.) When the sirens of Valente's squad car were activated, an in-vehicle recording system activated automatically. (Pl.'s LR 56.1 Stat., Dkt. # 113, at ¶ 16.)

Valente approached Plaintiff's car and asked to see Plaintiff's license, and Plaintiff complied. (Defs.' LR 56.1 Stat., Dkt. # 94 at ¶ 15.) Valente did not ask Plaintiff for proof of insurance. (Pl.'s LR 56.1 Stat., Dkt. # 113, at ¶ 18.) At some point in the stop, Valente asked Plaintiff to step out of the vehicle, conducted a pat-down search, handcuffed him, and placed him in Valente's squad car. (Defs.' LR 56.1 Stat., Dkt. # 94 at ¶ 21.) Valente did not inform Plaintiff of the reason for his arrest. (Pl.'s LR 56.1 Stat., Dkt. # 113, at ¶ 21.) While Plaintiff was in the squad car, Valente searched Plaintiff's car and then caused it to be towed away while Valente drove Plaintiff to the police station. (Defs.' LR 56.1 Stat., Dkt. # 94 at ¶ 22-23; Pl.'s LR 56.1 Stat., Dkt. # 113, at ¶ 22.)

---

[2] There are a number of other factual matters which one party characterizes as disputed but which the other party insists is undisputed according to the admissible evidence in the record. The Court examines such matters further below and determines whether they represent actual disputes of fact within the meaning of Federal Rule of Evidence 56(a). This section titled "Undisputed Facts" contains only those facts that both parties recognize as undisputed.

As a result of the stop, Plaintiff was issued citations for speeding, operating an uninsured vehicle, unlawful use of a license, and driving with a suspended license. (Defs.' LR 56.1 Stat., Dkt. # 94 at ¶23.) All four citations were dismissed on October 12, 2011 before the Circuit Court of Cook County. (*Id*. at ¶24). Plaintiff was ultimately forced to pay a total of $1,100.00 to retrieve his car from the towing service. (Pl.'s LR 56.1 Stat., Dkt. # 113, at ¶27.)

## **Summary Judgment Standard**

A district court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute exists as to any material fact, a court must view all the evidence and draw all reasonable inferences in favor of the non-moving party. *See Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). It is not appropriate for the court to judge the credibility of the witnesses or evaluate the weight of the evidence; the only question on summary judgment is "whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009). Summary judgment is appropriate only if the record, taken as a whole, establishes that no reasonable jury could find for the non-moving party. *See Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004).

## **Discussion**

The Court's task in this case is complicated by the fact that both parties' versions of these events have changed over the course of over two years of litigation and voluminous pleadings. Moreover, the parties do not agree on which facts have been admitted to and which can be

properly considered disputed. In order to determine whether a dispute of material facts exists, the Court first examines the key factual matters that the non-moving party identifies as disputed and then determines whether the record contains admissible evidence demonstrating a dispute of material fact as to that matter. Having thus clarified the factual record, the Court will then determine whether a reasonable jury could find for Plaintiff based on that record.

REMAINING FACTUAL DISPUTES

The party opposing a motion for summary judgment must present evidence – not simply allegations – on which a reasonable jury could find for that party. *See de la Rama v. Illinois Dep't of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008) ("A nonmoving party cannot defeat a motion for summary judgment with bare allegations"). While a bare contention that an issue of fact exists is insufficient to create a factual dispute*, see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), where sworn testimony conflicts a court must resist "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). For that reason, the Seventh Circuit has characterized summary judgment as the "put up or shut up" stage of a lawsuit, where a party must "show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). With this standard in mind, the Court turns to the specific factual matters disputed by the parties and decides whether both sides of the alleged dispute are supported by admissible evidence in the record.

*Whether Plaintiff was speeding*

In moving for summary judgment, Defendants suggest that "the undisputed facts indicate Valente observed [Plaintiff] speeding prior to effectuating the stop." (Mem. Supp. Summ. J., Dkt. # 93, at 4.) In support of their contention that Plaintiff was speeding, Defendants point to Valente's testimony in his sworn affidavit and in his police report stating that his radar gun clocked Plaintiff at 42 miles per hour in a 30 mile per hour speed zone. Plaintiff, however, argues that he has consistently denied speeding and has bolstered these denials with evidence of traffic and road conditions that make speeding in that location improbable. (Mem. Opp'n Summ. J., Dkt. # 113, at 6.)

The Court agrees with Plaintiff that the record reflects a question of material fact as to whether Plaintiff was speeding. In the sworn affidavit attached to his Third Amended Complaint, Plaintiff avers that "at no time either prior to or during Valente's initial traffic stop of Plaintiff… had Plaintiff Dyson engaged in any traffic violations." (Third Am. Compl., Dkt. # 77 at ¶ 27.) While this assertion does not specifically address speeding, Plaintiff's sworn deposition is more explicit. In response to questions about his speed Plaintiff repeatedly maintains that he "wasn't going over 30," that he "wasn't speeding," and that he knew he was obeying the speed limit because he "was checking [his] speedometer." (Defs.' Ex. 2, Dkt. # 94-2, at 62-64.)

While Plaintiff's testimony in the deposition as to precisely when he checked his speedometer is admittedly muddled, the Court cannot agree with Defendants' argument that this lack of clarity precludes Plaintiff's testimony from creating a material issue of fact. Had Defendants offered any evidence corroborating Valente's version of events other than his own testimony, the Court's analysis might be different. As it stands now, however, the only evidence in the record as to Plaintiff's speed consists of testimony by Valente that it was 42 miles per hour

and testimony by Plaintiff that it was no more than 30 miles per hour.[3] Because the Court may not make an independent assessment of the relative credibility of the two witnesses, the record reflects a dispute of fact that must be resolved by the jury.

*Whether Plaintiff's license was suspended*

Defendants also argue that the suspension of Plaintiff's license at the time of the arrest for failure to pay child support is an undisputed fact. (Mem. Supp. Summ. J., Dkt. # 93, at 5.) In support of this allegation, Defendants offer essentially the same evidence they put forward for the speeding allegation: Valente's testimony in his police report and his declaration that the Law Enforcement Automated Data System ("LEADS") identified Plaintiff's license as suspended.[4] Plaintiff responds that this too is a contested fact, denying statements regarding his license status in his L.R. 56.1 submissions. (Mem. Opp'n Summ. J., Dkt. # 113, at 6.)

Unlike the allegation that he was speeding, however, Plaintiff did not deny that his license was suspended in any of his sworn testimony. Plaintiff evaded questions in his deposition about whether his license was actually suspended for failure to pay child support – insisting that the question was "irrelevant" or purporting to "plead the fifth." (Defs.' Ex. 2, Dkt. # 94-2, at 19, 24.) When confronted with documents showing his license history, however, Plaintiff admitted that at the time of the stop he was "probably" driving on a suspended license though he insisted

---

[3] Because the Court finds that Plaintiff's testimony alone is sufficient to create a triable issue of material fact as to his speed, it is unnecessary to consider Plaintiff's proffered evidence about road conditions. As such, the Court need not wade into the parties' dispute as to: (1) where precisely Plaintiff was stopped; (2) the condition of the railroad tracks in that locale; (3) the traffic conditions at the time; or (4) the alleged capabilities of Valente's radar gun.

[4] Defendants also offer "Exhibit 4, Certified Driving Record of Terry Dyson" as showing that Plaintiff's license was in fact suspended. (Defs.' LR 56.1 Statement, Dkt. # 94 at ¶19). Plaintiff correctly points out that Defendants' Exhibit 4 says nothing of the sort, being a single handwritten page two sentences long of uncertain provenance or authorship noting only that the citations against Plaintiff were dismissed. (Defs.' Ex. 2, Dkt. # 94-4.) While it appears that Defendants intended to enter Plaintiff's driving record into evidence, they failed to do so and the Court can identify nothing in the record indicating a license suspension other than Valente's testimony.

he was unaware of that fact. (*Id*. at 96.) Plaintiff's affidavit attached to this Third Amended Complaint nowhere alleges that his license was not suspended, and he appears to abandon this argument in his response to the summary judgment motion.

Because Valente's testimony that Plaintiff's license was suspended remains unrebutted by any admissible evidence, the Court considers undisputed the fact that Plaintiff was driving on a suspended license when stopped by Valente.

*Whether Valente knew Plaintiff's license was suspended*

Beyond whether or not Plaintiff's license was suspended, the parties also dispute the extent to which Valente knew or could have known that fact at the time he arrested Plaintiff. Defendants point to Valente's sworn testimony that after asking Plaintiff for his license, Valente briefly returned to his squad car where he checked the license in the LEADS database and discovered it was suspended. Plaintiff contests this, denying that Valente ever returned to his squad car between asking Plaintiff for his license and placing him under arrest. (Mem. Opp'n Summ. J., Dkt. # 113, at 8.)

Plaintiff has failed to offer any evidence to counter the assertion that Valente briefly returned to his squad car with Plaintiff's license and checked it in LEADS. In the affidavit attached to his Third Amended Complaint, Plaintiff himself clearly states that "Plaintiff Dyson tendered over his driver's license and proof of insurance card to defendant Valente, after which defendant Valente momentarily returned to his vehicle." (Third Am. Compl., Dkt. # 77 at ¶ 20.) Plaintiff's deposition is not to the contrary, as Plaintiff answered "I don't remember" when asked whether Valente had returned to his car for a moment with the license. (Defs.' Ex. 2, Dkt. # 94-2, at 75.) Only after the summary judgment motion was filed did Plaintiff change his tune and

7

begin denying that Valente returned to his car; the undated, unnotarized "sworn statement" appended to his response to the summary judgment motion does not qualify as admissible evidence and was in any case offered well after the discovery deadline had passed. (Dyson Sworn Stat., Dkt. # 113, at 2.)

The Court thus finds that the uncontroverted facts in the record show that Valente returned to his vehicle and checked Plaintiff's license status prior to arresting him.[5]

*Other matters in dispute*

There are a number of other matters that the parties do not agree are undisputed. These include (1) whether Valente was driving southbound on Pulaski Avenue and made a U-turn to pull behind Plaintiff, or whether he pulled directly behind Plaintiff from the driveway of a police station; (2) whether Valente asked Plaintiff for proof of insurance at any time during the stop; (3) whether the speed limit on Pulaski Avenue changes north of 149th Street; (4) whether the condition of the train tracks near the intersection of Pulaski Avenue and 149th Street causes traffic to slow; (5) whether the citations given to Plaintiff as a result of this arrest were dismissed for lack of probable cause or due to a "technicality"; (6) whether DVD recordings from Valente's squad car recording system are required by policy to be retained; (7) whether Valente's squad car was equipped with a GPS system to log unit locations; (8) whether Valente's radar gun would have had the capability to accurately capture Plaintiff's speed given the traffic conditions

---

[5] Plaintiff is correct that this Court had previously denied a motion to dismiss which argued that Valente's knowledge of Plaintiff's license status established probable cause to arrest as a matter of law. (Mem. Op. Order, Dkt. # 87.) The Court so ruled, however, because Plaintiff's complaint stated only that Valente returned to his vehicle – not that he checked the LEADS database and learned Plaintiff's license was suspended. The Court held that this fact "supports, but does not compel, the inference that Valente checked the status of plaintiff's license," and accordingly that the complaint survived a Rule 12(b)(6) challenge. (*Id*. at 3). At the summary judgment stage, the Court is no longer limited to Plaintiff's complaint and must credit the additional uncontroverted evidence stating that Valente did check Plaintiff's license in LEADS.

and positions of the two cars; and (9) whether Valente's radar gun created a log file showing its speed readings.

Upon examining both parties' allegations with regard to these disputes, the Court finds that none of them are relevant to the disposition of the instant summary judgment motion. *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) ("Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute"). The Court having already decided above that there exists a material question of fact as to Plaintiff's speed, none of the disputes regarding radar capabilities, road conditions, speed limit postings, or the relative positions of Plaintiff's and Valente's cars need be addressed here.[6] The Court having decided above that no material dispute exists as to Plaintiff's license status or Valente's knowledge thereof, whether or not Valente asked Plaintiff for proof of insurance is irrelevant because it simply goes to a possible *alternative* source of probable cause for the arrest. Plaintiff's allegations regarding missing evidence (GPS data, a DVD recording of the stop, and a radar gun log) are matters that Plaintiff already raised on discovery, and in any case none of them are relevant to the claims Plaintiff asserts here. Finally, the dispute as to the reason Plaintiff's citations were dismissed is irrelevant. That an arrestee is eventually acquitted of the charges against him or her (or has them dismissed) is not dispositive of whether the officer had probable cause to arrest. *See Stokes v. Bd. of Educ. of the City of Chicago,* 599 F.3d 617, 622–23 (7th Cir. 2010) (noting that the probable cause standard does not require an officer "to act as a judge or jury to determine whether a person's conduct satisfies all of the essential elements of a particular

---

[6] Plaintiff's response to the summary judgment motion includes a filing requesting that this Court take judicial notice of several facts pursuant to Federal Rule of Evidence 201. (Pl.'s Req. Judicial Notice, Dkt. # 113.) While it is unclear that any of these facts are properly subject to judicial notice as Plaintiff has presented them, most of the purported facts relate to the geography of the stop area and to speed limits in effect there; because the Court finds that a material factual dispute as to Plaintiff's speed exists, it is unnecessary to take notice of these facts and the Court declines to do so. The final four requests concern the capabilities of vehicle-mounted radar and GPS systems. None of these facts are either generally known or capable of being readily and accurately determined from sources of unquestioned accuracy, as Rule 201(b) requires. *See* Fed. R. Evid. 201.

9

statute"). Even assuming Plaintiff's contention that the citations were dropped because the Circuit Court of Cook County found no probable cause for the stop, the Court is not bound by that determination and must conduct an independent Fourth Amendment analysis.

ANALYSIS

Having now concluded that the only material fact in dispute is whether Plaintiff was speeding, the Court evaluates whether the undisputed facts in the record would prevent a reasonable jury from ruling in Plaintiff's favor. In the surviving causes of action in his Third Amended Complaint, Plaintiff asserts that his Fourth Amendment rights were violated when (1) Valente stopped Plaintiff's car, searched his person, and placed him under arrest, all without probable cause, and (2) Valente searched Plaintiff's car and seized it by having it towed away when Plaintiff was arrested, also without probable cause to justify such actions. (Third Am. Compl., Dkt. # 77 at 10-13).

In moving for summary judgment, Defendants argue that no issue of material fact exists and on which a reasonable jury could find for Plaintiff, because (1) Valente had probable cause to stop Plaintiff's car when he observed Plaintiff speeding, (2) Valente had probable cause to arrest and search plaintiff when a check of Plaintiff's license against the LEADS database revealed that it was suspended, (3) the search and impoundment of Plaintiff's vehicle was reasonable given Plaintiff's arrest, and (4) even if a fact issue as to any of the above exists, Defendants are shielded by qualified immunity. (Mem. Supp. Summ. J., Dkt. # 93). The Court addresses each of these arguments in turn.

*Probable cause for the initial traffic stop*

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. Amend. IV. Detaining individuals by stopping a vehicle "constitutes a 'seizure' of persons" and is therefore "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 809 (1996). An automobile stop qualifies as reasonable when the police have probable cause to believe that a law has been broken – including a traffic violation. *See United States v. Moore*, 375 F.3d 580, 583 (7th Cir. 2004).

As the Court noted above, there remains a material dispute of fact as to Plaintiff's speed at the time he was stopped. Defendants' arguments for summary judgment as to the initial stop rely solely on the assumption that Valente's uncorroborated testimony about Plaintiff's speed is accurate, while Plaintiff's similarly uncorroborated testimony is false. Resolving this factual dispute would necessarily require a judgment as to the relative credibility of conflicting witnesses – precisely the sort of evidence-weighing that is inappropriate at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986) (holding that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"). A reasonable jury could choose to credit Plaintiff's testimony as to his speed, thereby finding that Valente lacked probable cause to stop Plaintiff in violation of the Fourth Amendment. *See Hopkins v. O'Brien*, No. 09 C 6877, 2011 WL 4585233, at *5 (N.D. Ill. Sept. 30, 2011) (viewing plaintiff's testimony that he was not speeding as sufficient to rebut officer's testimony that he was speeding, and thereby denying summary judgment). The Court therefore denies summary judgment for Defendants as to the initial traffic stop.

The Court notes, however, that any damages available to Plaintiff for an unlawful traffic stop alone would be miniscule. While the Seventh Circuit has acknowledged that an unlawful traffic stop can violate the Fourth Amendment, it has also suggested that such minor violations may be "*de minimis* deprivations of liberty" as the damages would be "too slight to support the expense of suing." *See Ford v. Wilson*, 90 F.3d 245, 248 (7th Cir. 1996) ("There are such things as *de minimis* deprivations of liberty; maybe a routine traffic stop is one of them") (internal citations omitted); *see also Williams v. Edwards*, No. 10 C 1051, 2012 WL 983788, at *7 (N.D. Ill. Mar. 22, 2012) (considering claim that traffic stop was made in violation of the Fourth Amendment, but noting that "if Plaintiff were to prevail on that issue, his damages would be minimal").

*Probable cause for search and arrest of Plaintiff*

The Court next turns to the question of whether, based on the undisputed facts in the record, a reasonable jury could find that Valente's search and arrest of Plaintiff violated the Fourth Amendment.

In order to make out a claim for a Fourth Amendment false arrest violation, a plaintiff must show that the arresting officer lacked probable cause to arrest him. *See Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056 (7th Cir. 2011). As such, the defendant officer can conclusively defeat the claims against him by establishing probable cause to arrest. *See Padula v. Leimbach,* 656 F.3d 595, 601 (7th Cir. 2011) ("Probable cause is an absolute defense to a wrongful arrest claim asserted under § 1983 against police officers"). Probable cause to arrest exists if "at the time of the arrest, the facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown,

that the suspect has committed, is committing, or is about to commit an offense." *Id*. Once an officer has legitimately placed a suspect under arrest, considerations of officer safety and evidence preservation lead to the well-settled principle that an officer is permitted to search that suspect's person without violating the Fourth Amendment. *See United States v. Robinson*, 414 U.S. 218, 230-34 (1973).

As noted above, the undisputed facts in the record show that Valente learned that Plaintiff's license was suspended after stopping Plaintiff but before placing him under arrest. Having thus discovered that Plaintiff had committed a crime, Valente was justified in both placing Plaintiff under arrest and in conducting a pat-down search of Plaintiff's person.[7]

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims relating to his arrest and the search of his person.

*Probable cause for search and seizure of Plaintiff's car*

The Court next turns to the question of whether based on the undisputed facts in the record, a reasonable jury could find that Valente's search and seizure of Plaintiff's automobile violated the Fourth Amendment.

The decision for police to impound a vehicle and the subsequent decision to search it are properly analyzed separately to ensure that both decisions are reasonable under the Fourth Amendment. *See United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996) ("[T]he decision to impound (the 'seizure') is properly analyzed as distinct from the decision to inventory (the

---

[7] While in a criminal case the "fruit of the poisonous tree" doctrine might render the arrest in this case tainted by the possible constitutional infirmity of the initial stop, no such doctrine extends to civil cases for false arrest. *See Townes v. City of New York*, 176 F.3d 138 (2d Cir.1999). Although the Seventh Circuit has not expressly adopted the ruling in *Townes* rendering the fruit of the poisonous tree doctrine inapplicable to civil suits, courts in this Circuit appear to uniformly apply it. *See, e.g.*, *Williams v. Carroll*, No. 08 C 4169, 2010 WL 5463362, at *4 (N.D. Ill. Dec. 29, 2010) (agreeing with *Townes* that lack of probable cause for an initial stop does not vitiate an officer's later discovery of probable cause to arrest, and collecting other Seventh Circuit district court cases holding the same).

'search')"). The seizure and impoundment of a vehicle may be reasonable when performed pursuant to a routine police policy, particularly where the driver has been arrested and no one else is present to drive the car away. *See United States v. Cherry*, 436 F.3d 769, 775 (7th Cir. 2006) (noting that the Fourth Amendment does not "demand that police offer a motorist an alternative means of removing his vehicle that will avoid the need to tow it"). Once the police have reasonably decided to impound a car, inventory searches of the car's contents are typically reasonable under the Fourth Amendment. *See South Dakota v. Opperman*, 428 U.S. 364, 376 (1976) (noting that an inventory search attending impoundment is permissible for "the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger") (internal citations omitted).

Because Plaintiff was the car's only occupant and was validly placed under arrest, Valente was justified in causing Plaintiff's car to be towed pursuant to his department's impoundment policy and performing an inventory search. Therefore, Defendants are entitled to summary judgment on Count II of Plaintiff's Third Amended Complaint.

*Qualified immunity*

As the Court has granted summary judgment for Defendants on all claims relating to Plaintiff's arrest and the search and impoundment of his car, it is unnecessary to consider qualified immunity as to those claims. Because there remains an issue of material fact regarding Plaintiff's claim that Valente lacked probable cause for the initial traffic stop, however, the Court must consider Defendants' argument that Valente is protected from this claim by qualified immunity.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has mandated a two-step analysis for assessing government officials' claims of qualified immunity claims. First, a court must decide whether the facts as shown by the plaintiff adequately make out a violation of a constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the Plaintiff has satisfied that inquiry, the court must then decide whether the right at issue was "clearly established" at the time of officer's alleged misconduct. *Id.*

Defendants assert that Valente is protected from a Fourth Amendment claim relating to the initial traffic stop by qualified immunity, because he reasonably relied on first-hand observation and on his radar gun to determine that Plaintiff was speeding. Further, Defendants argue that even if Valente in fact lacked probable cause, he is entitled to qualified immunity because he had "arguable probable cause." *See Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) ("Arguable probable cause exists when a reasonable police officer in the same circumstances and with the same knowledge … could have reasonably believed that probable cause existed in light of well-established law"). This argument, however, presumes the truth of Valente's testimony. The disputes of fact described above preclude a finding of qualified immunity at the summary judgment stage. *See Jones v. Clark*, 630 F.3d 677 (7th Cir. 2011) (upholding denial of qualified immunity where officers and plaintiff disputed facts that went to establishing probable cause). While a good-faith belief by Valente that Plaintiff was speeding would be enough to entitle him to qualified immunity, immunity would not attach if – as Plaintiff alleges – Valente never truly believed Plaintiff to be speeding and in fact stopped Plaintiff for reasons relating to racial profiling. If the trier of fact were to credit Plaintiff's testimony, Valente could have no arguable grounds for probable cause to stop Plaintiff.

Accordingly, the Court declines to grant Valente qualified immunity from liability arising from the initial traffic stop.

**Conclusion**

For the reasons set forth above, the Court grants in part and denies in part Defendants' motion for summary judgment (Dkt. # 92). Plaintiff's claims for (1) false arrest, (2) unlawful search of his person, and (3) unlawful search and seizure of his vehicle are dismissed with prejudice. Summary judgment is denied only as to Plaintiff's claims alleging unlawful seizure in the initial traffic stop.

**Date**: February 18, 2015

_____
**Ronald A. Guzmán
United States District Judge**